J-A16006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RONALD AND ALICIA BENTON, INDIVIDUALLY AND AS HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 1938 MDA 2019 |
| POLLINA SHULL, LINA I. EYDLIN, ALEX EYDLIN AND VON M. SCHWANDT | : | |

Appeal from the Order Entered November 6, 2019
In the Court of Common Pleas of Berks County
Civil Division at No(s):  18-2469

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED SEPTEMBER 04, 2020**

Alicia and Ronald Benton appeal from the order granting summary judgment in favor of Pollina Shull and her parents, Linda and Alex Eydlin, in the Court of Common Pleas of Berks County. On appeal, the Bentons contend the trial court erred in granting summary judgment and dismissing their claims under the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S.A. §§ 1701 et. seq. We affirm in part and reverse in part.

This case arises from a three-car accident in which a vehicle driven by Alicia Benton was struck from behind on Route 422 in Berks County. Shull, who was driving a car owned by her parents, rear-ended a car driven by Von Schwandt. Schwandt's car, in turn, then struck Alicia Benton's rear bumper. Although the Benton car sustained only minor damage, Ronald, Alicia's

husband and the passenger in the front seat, claimed he suffered neck and back injuries due to the accident.

The Bentons filed a tort action against Shull, Shull's parents, and Schwandt to recover damages for personal injury and loss of consortium. In their complaint, the Bentons alleged that, as a result of Shull and Schwandt's negligence, Ronald sustained severe injuries to his neck and back. These injuries, in turn, resulted in mental anguish, lost income, and medical expenses. Accordingly, the Bentons sought economic as well as non-economic damages.

Thereafter, Schwandt filed a motion for summary judgment alleging Shull and her parents were solely liable to the Bentons. The trial court granted the motion and dismissed Schwandt from the case.

Shull and her parents filed their Answer and New Matter, averring that the Bentons were precluded from recovering damages for non-economic loss because they had elected limited-tort coverage under the MVFRL. Shull and her parents alleged that the MVFRL only allows a limited-tort plaintiff to recover non-economic damages for "serious injuries," and that Ronald was not able to prove that his injuries were "serious" under the MVFRL.

At his deposition, Ronald testified that the injuries he suffered in the accident have had a severe impact on his physical condition. In the years following the accident, he underwent multiple surgical procedures to alleviate pain in his neck and back. These procedures included a cervical discectomy in his neck and lumbar decompression and fusion surgery on his back. He has

also undergone physical therapy for his condition. However, despite receiving various medical treatments, Ronald opined that his neck and back pain has worsened in the years since the accident.

He also explained that his injuries have had an adverse effect on his social life and marriage. Ronald is no longer able to drive – even though he drove very little before the accident – and spends most of his time at home. Moreover, he stated that he stopped having sex with his wife, Alicia, due to the pain in his neck and back.

In addition, Ronald testified that his injuries prevented him from being able to work at the janitorial services business he owns. Ronald maintained that after the accident he was forced to hire employees to perform his responsibilities. He claims he is no longer able to work as a result of the accident.

The evidence adduced at the deposition also showed that Ronald had a history of neck and back injuries predating the accident at issue. Ronald admitted that he suffered neck and back injuries on several occasions prior to the accident and that he experienced chronic neck and back pain for nearly two decades. Throughout the years, Ronald has undergone various treatments and surgical procedures on his neck and back in an attempt to alleviate his pain. In fact, several hours before the accident, Ronald was seen at the Rothman Institute and was given a prescription for oxycodone to treat the pain in his neck and back.

Following Ronald's deposition, Shull and her parents filed a motion for partial summary judgment on the Bentons' claim for non-economic damages under the MVFRL. In their motion, they argued that, since there was no expert medical report showing that Ronald sustained a serious injury, the Bentons were barred from recovering non-economic damages. The trial court held a hearing and granted the motion. Accordingly, the Bentons were precluded from presenting any testimony or evidence related to any non-economic damages at trial.

Shortly thereafter, Shull and her parents filed a motion for summary judgment on the Bentons' remaining claim for economic damages. They argued that the economic damages claim should be dismissed as it was entirely dependent upon the claim for non-economic damages, which had already been disposed of by the trial court. The trial court agreed, and entered an order granting the summary judgment motion and dismissing the Bentons' civil action with prejudice. This timely appeal followed.

On appeal, the Bentons raise the following issues for our review:

1. [Whether] the lower court erred in granting partial summary judgment where the evidence introduced showed there was a genuine issue of material fact as the medical evidence uniformly stated the accident exacerbated [Ronald Benton's] pre-existing condition, there was a marked increase in pain as a result of the accident . . . and there was medical evidence that opined that [Ronald's] current condition was caused by the motor vehicle accident?

2. [Whether] the lower court err[ed] in granting summary judgment and dismissing the complaint with prejudice when the court incorrectly held the preclusion of the claim for non-economic

damages did not preclude plaintiff from asserting a claim for economic damages as pursuant to 75 Pa.C.S.A § 1705 (d), a person who elects the limited tort alternative remains eligible to seek compensation for economic loss?

Appellant's Brief, at 5.

In their first issue, the Bentons argue the trial court erred in granting partial summary judgment on their claim for non-economic damages. We disagree.

We review a challenge to the entry of summary judgment as follows:

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P. Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*In re Risperdal Litigation*, 175 A.3d 1023, 1028-1029 (Pa. Super. 2017).

In Pennsylvania, when purchasing automobile insurance, drivers are presented with the option of choosing either full or limited-tort coverage under the MVFRL. *See* 75 Pa. C.S.A. § 1705. A driver who has selected full-tort

coverage under their insurance policy and who is injured by a negligent driver can recover all medical and out-of-pocket expenses, and receive financial compensation for pain and suffering and other non-economic damages. **See Verner-Mort v. Kapfhammer**, 109 A.3d 244, 248 (Pa. Super. 2015) (citing 75 Pa. C.S.A. § 1705(a)(1)(B)). "A limited-tort plaintiff also can recover all medical and out-of-pocket expenses; however, such a plaintiff cannot recover for pain and suffering or other non-economic damages unless the plaintiff's injuries fall within the definition of 'serious injury'." **Id**. (citing 75 Pa. C.S.A. § 1705(a)(1)(A)). A "serious injury" is defined as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa. C.S.A. § 1702.

Here, there is no dispute that the Bentons elected limited-tort coverage under their policy and therefore must establish that Ronald suffered a "serious injury" as defined by the MVFRL in order to recover non-economic damages. There is also no dispute that, under the circumstances of this case, Ronald was required to show he sustained an injury resulting in "serious impairment of body function." The Bentons, however, contest the trial court's conclusion that they failed to present evidence capable of establishing that Ronald sustained such an injury. They assert that this question should have been determined by a jury, not the court. **See** Appellant's Brief, at 17.

Our Supreme Court in **Washington v. Baxter**, 719 A.2d 733, 740 (Pa. 1998), held that the threshold determination of whether a "serious injury" has

been sustained was to be "left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." However, the Court went on to find that the trial court in that case had properly granted summary judgment on the basis that the plaintiff had failed to establish that he had suffered a "serious injury." *See id*.

In reaching this conclusion, the *Washington* Court explained that the inquiry is not whether the plaintiff has adduced sufficient evidence to show that he has suffered any injury. Rather, the Court emphasized that the question is whether the plaintiff has shown that he has suffered a serious injury such that a body function has been seriously impaired. *See id*., at 741. To help lower courts answer that question, the Court directed them to consider the following factors: (1) the extent of the impairment, (2) the length of time the impairment existed, (3) the treatment required to correct the impairment, and (4) any other relevant factors. *See id*., at 740. Further, the Court stated that medical testimony will generally be needed to establish the existence and extent of an impairment. *See id*.

Therefore, Ronald was required to establish that the accident caused a serious injury in order to get non-economic damages. In applying *Washington*, this Court has found that a limited-tort elector seeking non-economic damages did not establish that he had suffered a "serious injury" when he did not provide any objective medical evidence regarding the degree of an impairment and the extent of any pain suffered. *See McGee v.*

*Muldowney*, 750 A.2d 912, 915 (Pa. Super. 2000). We held that subjective allegations alone, in the absence of objective medical evidence, are not sufficient to establish that a serious injury has occurred. *See id*.

Here, Ronald presented evidence – most notably, the opinion of Dr. Alexander Ricciuti, M.D. – that he suffered *some* injuries due to the accident. Dr. Ricciuti opined that, as a direct result of the accident, Ronald suffered a lumbar sprain, a cervical sprain, a myofascial spasm of the trapezius, and a thoracic sprain. *See* Exhibit E, at 3. However, given his pre-existing injuries, Ronald failed to establish that any of those injuries were serious.

As discussed above, Ronald suffered various injuries to his neck and back in the years leading up to the instant car accident. He sustained a lumbar disc herniation and other injuries to his neck and back in a series of car accidents predating the one at issue. *See* N.T., Deposition, 09/26/2018, at 45-46 and 118-119. He also suffered neck and back injuries due to a work-related accident and a medical mishap. *See id*., at 17-20. These episodes, in particular, required Ronald to undergo a cervical spinal fusion on his neck and a lumbar spinal fusion on his back. *See id*., at 21-22. Also, in that period, Ronald was diagnosed with Guillain-Barre syndrome and experienced a degree of weakness and paralysis in his back.[1] *See id*., at 14-15.

---

[1] "Guillain-Barre syndrome is rare disorder in which your body's immune system attacks your nerves." Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/guillain-barre-

As a result of these injuries, Ronald registered complaints of chronic neck and back pain for well over a decade. His extensive medical history reveals that his discomfort reached its apex on the day of the accident when he presented for an examination at the Rothman Institute. There, Ronald described to his treating physician, Dr. Saloni Sharma, M.D., that his neck and back pain was an "8" on a scale of 10. *See* Exhibit A, at 1. He also reported that he felt sharp and stabbing pain in his neck. *See id*. Dr. Sharma's examination noted "suspicious" changes in Ronald's cervical myelomalcia, as compared to previous years, and multiple levels of degenerative disc disease. *See id*., at 1.[2] The examination also showed a deterioration in Ronald's physical condition. This led Dr. Sharma to conclude that Ronald needed to continue seeking treatment for his chronic neck and back pain. *See id*., at 1-2.

Following the instant accident, we note that Ronald continued to complain of neck and back pain, but not on the level he did before the accident. He described his neck and back pain as between a "5" and "10" on

_____

syndrome/symptoms-causes/syc-20362793. The exact cause of Guillain-Barre syndrome remains unknown. *See id*.

[2] "Cervical myelopathy is a form of myelopathy that involves compression of the spinal cord in the cervical spine (neck)." Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/cervical-myelopathy. "Degenerative disk disease is when normal changes that take place in the disks of your spine cause pain." Johns Hopkins Medicine, https://www.webmd.com/back-pain/degenerative-disk-disease-overview#1.

the pain scale after the accident. *See* Exhibit C, at 2. This is a notable variation as Ronald stated before the accident that his pain was unequivocally an "8" on the pain scale. *See* Exhibit A, at 1. Further, the post-accident medical evidence shows that Ronald's cervical myelomalcia remains a noted concern as does his degenerative disc disease. *See* Exhibit C, at 1; *see also* Exhibit E, at 3-4. Hence, there is no objective evidence that would allow us to discern any significant dissimilarity between Ronald's physical condition prior to the accident and in the immediate aftermath.

Accordingly, none of the post-accident medical evidence established that Ronald suffered serious injuries to his neck and back. The medical evidence merely showed that Ronald suffered *some* injuries as a result of the accident. However, Ronald's evidence was insufficient to establish that any of the injuries he suffered from this accident were serious, given the serious injuries he was suffering from before the accident. Therefore, under the circumstances, we cannot conclude the trial court erred in finding the evidence insufficient to establish that Ronald suffered a serious injury due to the accident.

Next, the Bentons challenge the trial court's decision to grant summary judgment on their economic damages claim and dismiss their complaint with prejudice. They argue that the court erred in preventing them from asserting a claim for economic damages pursuant to 75 C.S.A. § 1705(d). *See*

Appellant's Brief, at 19. The Bentons contend that they retain the right to seek economic damages as authorized by the limited-tort option. *See id*.

Under the limited-tort option, a policy holder and other household members covered under the policy may seek to recover economic damages for all medical and out-of-pocket expenses. *See* 75 Pa. C.S.A. § 1705(a)(1)(A). Notably, a claim for economic damages is an entirely separate and distinct inquiry under the limited-tort option. *See Long v. Mejia*, 896 A.2d 596, 600 (Pa. Super. 2006). Therefore, even if the policy holder is precluded from seeking non-economic damages, he or she is entitled to present evidence of economic loss as a result of an accident. *See* 75 Pa. C.S.A. § 1705(a)(1)(A).

Here, the Bentons sought to present evidence of economic loss as a result of the accident. Even though their claim for non-economic damages was foreclosed by the trial court, the Bentons remained steadfast, as they do now, that the limited-tort option entitled them to seek economic damages to recover all medical and out-of-pocket expenses. But the trial court, having found that the Bentons failed to overcome the limited-tort threshold on non-economic damages, granted summary judgment on the issue of economic damages. *See* Trial Court Opinion, 01/24/2020, at 12.

In reaching this conclusion, the trial court misread the MVFRL. Under the statute, a claim for economic damages is entirely separate from a claim for non-economic damages. *See Long*, 896 A.2d at 600. As such, a claim for

economic loss under the limited-tort option is available regardless of whether or not the claimant succeeds on his or her non-economic claim for pain and suffering. ***See id***.

Moreover, the Bentons presented evidence capable of establishing that Ronald suffered an injury due to the accident. Unlike a claim for non-economic damages, the Bentons did not need to establish that Ronald sustained a serious injury in the accident. Rather, they needed only to present medical evidence that showed Ronald suffered *some* injury, which they did. For that reason, the Bentons should have been permitted to present evidence of economic loss to a jury, particularly with regard to unpaid medical bills and any lost wages. It was for the jury to decide whether those losses were caused by the accident or were the result of Ronald's pre-existing injuries.

As a result, we conclude that the trial court erred in granting summary judgment on the Bentons' claim for economic damages under the limited-tort option. The limited-tort option does not prevent claimants from seeking recovery for economic damages merely because the claim for non-economic damages fails. Thus, the Bentons are entitled to present evidence of economic loss incurred as a result of the accident.

Accordingly, we remand for further proceedings on the issue of economic damages.

Judgment affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2020